## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOSHUA WINSOR,<br>          on behalf of himself and<br>          those similarly situated<br><br>          Plaintiff,<br><br>v.<br><br>TBD PIZZA, INC.,<br>ERIC DELORENZO,<br>ROBERT P. RIVARD,<br>JOHN DOE CORPORATION 1-10,<br>& JOHN DOE 1-10,<br><br>          Defendants. | C.A. No. 1:21-cv-10551-LTS<br><br>Hon. Leo T. Sorokin |

## PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT

Plaintiff Joshua Winsor ("Plaintiff") hereby moves this Court to (i) enter the Proposed Order granting Plaintiff's Assented To Motion for Preliminary Approval of Proposed Class Action Settlement, (ii) preliminarily certify the proposed Class for settlement purposes under Rule 23(b)(3) of the Federal Rules of Civil Procedure, (iii) appoint Raimond & Staines, LLC as Class Counsel and Plaintiff Joshua Winsor as Settlement Class Representative, (iv) approve the substance, form, and manner of the Notices of Class Action Settlement for dissemination to all members of the Class, and (v) schedule a Final Approval Hearing.  Defendants assent to the relief requested.

Submitted in support of the Motion are Plaintiff's Memorandum of Law in Support of Motion for Preliminary Approval of Proposed Class Action Settlement, the Declaration of Frank V. Raimond in support of Plaintiff's Motion for Preliminary Approval and accompanying exhibits,

and a [Proposed] Order Granting Plaintiff's Motion for Preliminary Approval of Class Action

Settlement.

Dated: December 21, 2021

Respectfully submitted,

*/s/ Meaghan Jepsen*
Meaghan A. Jepsen (BBO# 693470)
Ransmeier & Spellman P.C.
1 Capitol Street, P.O. Box 600
Concord, N.H. 03302-0600
Tel: (603) 410-4913
*mjepsen@ranspell.com*

*Local Counsel for Plaintiff and the Proposed*
*Settlement Class*

*/s/ Frank V. Raimond*
Frank V. Raimond (*pro hac vice*)
Raimond & Staines, LLC
305 Broadway, 7th Floor
New York, New York 10007
*frank@raimondstaines.com*

*Counsel for Plaintiff and the Proposed Settlement*
*Class*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

JOSHUA WINSOR,
    on behalf of himself and
    those similarly situated

        Plaintiff,

v.

TBD PIZZA, INC.,
ERIC DELORENZO,
ROBERT P. RIVARD,
JOHN DOE CORPORATION 1-10,
& JOHN DOE 1-10,

        Defendants.

C.A. No. 1:21-cv-10551-LTS

Hon. Leo T. Sorokin

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S ASSENTED TO MOTION FOR PRELIMINARY APPROVAL OF CLASS AND C OLLECTIVE ACTION SETTLEMENT

Dated: December 21, 2021

**Ransmeier & Spellman P.C.**
Meaghan A. Jepsen (BBO# 693470)
1 Capitol Street, P.O. Box 600
Concord, N.H. 03302-0600
Tel: (603) 410-4913
*mjepsen@ranspell.com*

**Raimond & Staines, LLC**
Frank V. Raimond (*pro hac vice*)
305 Broadway, 7th Floor
New York, New York 10007
*frank@raimondstaines.com*

*Proposed Class Counsel*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................iii

INTRODUCTION ........................................................................................1

PROCEDURAL HISTORY ...........................................................................1

CLAIMS ASSERTED ...................................................................................2

SUMMARY OF THE SETTLEMENT AGREEMENT .................................3

ARGUMENT ...............................................................................................4

    A. The Settlement Satisfies the Requirements for Preliminary
    Approval Under the FLSA and Fed. R. Civ. P. 23 ...................................4

        1.    Legal Standard For Approval of FLSA Settlements ...........................4

        2.    Legal Standard for Preliminary Approval
            of Rule 23 Class Action Settlements ...............................................5

    B.  The Proposed Settlement Is A Fair, Reasonable and Adequate
    Resolution of a Bona Fide Dispute ........................................................7

        1. The Settlement Resolves A Bona Fide Dispute ......................................7

        2. Plaintiff And Class Counsel Have More Than
        Adequately Represented The Interests Of The Class ..................................8

        3. The Proposed Settlement Was Negotiated At Arms-Length
        And The Proponents Of The Settlement Are Highly
        Experienced In Similar Litigation ............................................................9

    C.  The Court Should Preliminarily Certify the State Law
    Settlement Classes under Rule 23(a) and (b)(3) ...................................11

        1. Numerosity ..........................................................................................12

        2. Commonality .......................................................................................12

        3. Typicality ............................................................................................13

        4. Adequacy ............................................................................................14

        5. Predominance ......................................................................................14

    D.  Collective Certification Under 29 U.S.C. § 216(b) is Appropriate ......................15

E.  The Service Award for Joshua Winsor Is Appropriate
and Should be Approved ................................................................15

F.  The Proposed Method of Class Notice Should Be Approved ..............................16

G.  The Requested Attorneys' Fees and Costs are Fair,
Reasonable, and Supported by Applicable Precedent ..........................................17

H.  Proposed Schedule ...................................................................................18

CONCLUSION ..................................................................................................19

# TABLE OF AUTHORITIES

**Statutes**

Fair Labor Standards Act (FLSA) ................................................................................passim

29 U.S.C. § 216(b) ................................................................................15

Fed. R. Civ. P. 23(a) ................................................................................12

Fed. R. Civ. P. 23(e) ................................................................5, 6, 11, 12

**Cases**

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591, 617 (1997) ................................................................................14

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds,*
568 U.S. 455, 460 (2013) ................................................................................12

*Andrews v. Bechtel Power Corp.,*
780 F.2d 124, 130 (1st Cir. 1985) ................................................................................13

*Balderas v. Massage Envy Franchising, LLP,*
No. 12–cv–06327 NC, 2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014) ........................11

*Belling Company v. Van Gemert,*
444 U.S. 472, 478 (1980) ................................................................................18

*Bradford v. Team Pizza,*
No. 1:20-cv-00060, 2021 U.S. Dist. LEXIS 200773 (S.D. Ohio Oct. 19, 2021) ....................10

*Chalverus v. Pegasystems, Inc.,*
No. 97-12570-WGY (D. Mass. 2000) ................................................................................18

*Dillworth v. Case Farms Processing, Inc.,*
No, 5:08-cv-1694, 2010 WL 776933, at *8 (N.D. Ohio, Mar. 8, 2010) ..............................10

*Durett v. Housing Auth. of Providence,*
896 F. 2d 600, 604 (1st Cir. 1990) ................................................................................5

*Eisen v. Carlisle & Jacquelin,*
417 U.S. 156, 173–77 (1974) ................................................................................16

*E.E.O.C. v. Astra U.S.A., Inc.,*
94 F. 3d 738, 744 (1st Cir. 1996) ................................................................................5

*Entin v. Barg,*
412 F.Supp. 508, 514 (E.D. Pa. 1976) ................................................. 11

*Garcia v. E.J. Amusements of New Hampshire, Inc.,*
98 F. Supp. 3d 277, 288 (D. Mass. 2015) ............................................. 13

*Garcia-Rubiera v. Calderon,*
570 F.3d 443, 460 (1st Cir. 2009) ...................................................... 13

*Hatmaker v. PJ Ohio, LLC,*
No. 3:17-cv-146, 2019 WL 5725043 (S.D. Ohio Nov. 5, 2019) ...................... 8

*In Re Armored Car Antitrust Litig.,*
472 F.Supp. 1357, 1373 (N.D. Ga.1979) .............................................. 10

*In re Compact Disc Minimum Advertised Price Antitrust Litig.,*
216 F.R.D. 197, 203 (D. Me. 2003) .................................................... 17

*In Re Four Seasons Secs. Laws Litig.,*
58 F.R.D. 19, 37 (W.D. Okla.1972) .................................................... 11

*In re Lupron Mktg. & Sales Practices, Litig.,*
228 F.R.D. 75, 88 (D. Mass 2005) .................................................... 5, 6

*In re Puerto Rican Cabotage Antitrust Litig.,*
269 F.R.D. 125, 140 (D.P.R. 2010) ...................................................... 6

*In re Relafen Antitrust Litig.,*
231 F.R.D. 52, 69 (D. Mass. 2005) .............................................. 12, 14, 15

*In Re Sunrise Secs. Litig.,*
131 F.R.D. 450, 457 (E.D. Pa. 1990) .................................................. 10

*In re Warfarin Sodium Antitrust Litig.,*
212 F.R.D. 231, 256-58 (D. Del. 2002) ................................................ 10

*Johnson v. VCG Holding Corp.,*
802 F. Supp. 2d 227, 233 (D. Me. 2011) .............................................. 15

*Kennedy v. Mountainside Pizza, Inc.,*
No. 19-CV-01199-CMA-STV, 2020 WL 5076756, at *3 (D. Colo. Aug. 26, 2020) ......... 8

*Lapan v. Dick's Sporting Goods, Inc.,*
No. 1:13-cv-11390-R, 2015 WL 8664204, at * (D. Mass. Dec. 11, 2015) ................ 17

*Lauture v. A.C. Moore Arts & Crafts, Inc.*,
No. 17-cv-10219-JGD, 2017 U.S. Dist. LEXIS 87928, at *2 (D. Mass. June 8, 2017) .............4

*Lynn's Food Stores, Inc. v. U.S.*,
679 F. 2d 1350, 1354 (11th Cir. 1982) ..................................................................4

*Ma v. Covidien Holding, Inc.*,
No. SACV 12–02161–DOC, 2014 WL 360196, at *4-5 (C.D. Cal. Jan. 31, 2014) ................11

*Mansingh v. Exel Direct, Inc.*,
No. 12-11661-DPW (D. Mass. May 7, 2014) ...........................................................18

*Michaud v. Monro Muffler Brake, Inc.*,
12-cv-00353-NT, 2015 WL 1206490, at *9 (D. Me., Mar. 17, 2015) ....................5, 12, 13

*Miller v. Carrington Mortgage Serves. LLC*,
2:19-cv-00016-JDL, 2020 WL 2898837, at *4 (D. Me. June 3, 2020) ...............................6

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306, 314 (1950) ...............................................................................16

*Nat'l Assoc. of Chain Drug Stores v. New England Carpenters*,
582 F. 3d 30, 44 (1st Cir. 2009) .........................................................................9

*Nat'l Assoc. of Deaf v. Mass. Institute of Technology*,
No. 3:15-cv-30024-KAR, 2020 WL 1495903, at *3 (D. Mass. Mar. 27, 2020) ..................7, 8

*Nilsen v. York County*,
382 F. Supp. 2d 206, 2010 (D. Me. 2005) ............................................................16

*Overka v. American Airlines*,
265 F.R.D. 14, 18 (D. Mass. 2010) ....................................................................12

*Perrin v. Papa John's Int'l, Inc.*,
114 F. Supp. 3d 707 (E.D. Mo. 2015) ..................................................................8

*Poreda v. Boise Cascade, LLC*,
532 F. Supp. 2d 234, 239 (D. Mass. 2008) ...........................................................15

*Ripley v. Sunoco, Inc.*,
287 F.R.D. 300, 308 (E.D. Pa. 2012) ..................................................................12

*Rodriguez v. West Publ'g Corp.*,
No. CV05–3222 R(MCx), 2007 WL 2827379, at *9 (C.D. Cal. Sept. 10, 2007) ..................10

*Rolland v. Cellucci,*
191 F.R.D. 3, 8 (D. Mass. 2000) ................................................................................7

*Scovil v. FedEx Ground Package Sys., Inc.,*
10-CV-515-DBH, 2014 WL 1057079, at *8 (D. Me. Mar. 14, 2014) ...........................5, 15

*Singleton v. AT&T Mobility Servs., LLC,*
146 F. Supp. 3d 258, 260 (D. Mass. 2015) ..................................................................5

*Smilow v. Southwestern Bell Mobile Systems, Inc.,*
323 F.3d 32, 39 (1st Cir. 2003) ...............................................................................14

*Stovall-Gusman v. W.W. Granger, Inc.,*
13-cv-02540-HSG, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) ..........................11

*Viceral v. Mistras Grp., Inc.,*
Case No. 15-cv-2198-EMC, 2016 WL 5907869, at *7 (N.D. Cal. Oct. 11, 2016) .................11

*Waste Mgmt. Holdings, Inc. v. Mowbray,*
208 F.3d 296 (1st Cir. 2000) ...................................................................................13

## I.  INTRODUCTION

In this putative collective and class action alleging under reimbursement of delivery expenses for pizza delivery drivers that reduced their compensation below minimum wage, Plaintiff Joshua Winsor ("Plaintiff") commenced suit on behalf of all delivery drivers of the Defendants TBD Pizza, Inc., Eric Delorenzo and Robert P. Rivard (hereinafter "Defendants"). The parties have reached a Settlement that would resolve all the claims raised in this lawsuit.

Plaintiff now asks the Court to begin the process of finalizing the proposed Settlement Agreement, attached as **Exhibit 1**.[1]  The instant motion requests that this Court: (i) enter the Proposed Order granting Plaintiff's Assented To Motion for Preliminary Approval of Proposed Class Action Settlement, (ii) preliminarily certify the proposed Class for settlement purposes under Rule 23(b)(3) of the Federal Rules of Civil Procedure, (iii) appoint Raimond & Staines, LLC as Class Counsel and Plaintiff Joshua Winsor as Settlement Class Representative, (iv) approve the substance, form, and manner of the Notices of Class Action Settlement for dissemination to all members of the Class, and (v) schedule a Final Approval Hearing.  Defendants assent to the relief requested.

## II.  PROCEDURAL HISTORY

On September 23, 2019, Plaintiff initiated the lawsuit *Joshua Winsor v. TBD Pizza, Inc., et al.* (the "Lawsuit"), which is currently pending in the United States District Court for the District of Massachusetts (the "Court"), C.A. No. 1:21-cv-10551-LTS.  The lawsuit was initiated in the United States District Court for the District of New Hampshire.  Issue was joined when Defendants filed an Answer on December 17, 2019.  Plaintiff's motion to send notice to similarly situated employees was filed on March 25, 2020.  Subsequent to that motion, and before a decision was

---

[1] The agreement is ratified by Defendant, but he was unable to sign by the filing deadline.  Plaintiff will supplement the filing once Defendant has signed.

rendered, the matter was transferred from the District of New Hampshire to the District of Massachusetts on March 30, 2021.  The basis for this transfer was a question regarding the enforceability of mandatory arbitration agreements that were putatively governed by Massachusetts law.  Following the transfer to Massachusetts, document discovery proceeded and the Plaintiff was deposed.  Plaintiff's motion to send notice was granted in part and denied in part on June 8, 2021.  The matter was then stayed on July 12, 2021 to permit the parties to attempt private mediation of the claims.  A full day of private mediation was held on October 21, 2021 before the Honorable F. Bradford Stillman (ret.).  While the Lawsuit was not settled that day, the mediator continued to facilitate settlement talks and a tentative settlement was reached.  A further motion to stay pending settlement was filed on November 12, 2021 and granted on November 17, 2021.  This motion for preliminary approval is filed per the Court's set deadline of December 21, 2021 (*see* Dkt. no. 120).

### III.  CLAIMS ASSERTED

Plaintiff alleges that Defendants were definitionally employers and that Defendants collectively violated both the Federal Labor and Standards Act ["FLSA"] and applicable state laws in New Hampshire and Massachusetts.  Plaintiff claims that Defendants did so by under-reimbursing their employee delivery drivers for their delivery-related expenses.  Specifically, Plaintiff alleges that while Defendants paid their employee delivery drivers at or about minimum wage, they simultaneously required them to maintain and pay for cars used for Defendants' benefits.  Accordingly, Plaintiff alleges, employee delivery drivers had to incur and/or pay job-related expenses, including automobile maintenance and parts, licensing, registration, and financing costs, and other equipment necessary for drivers to complete their job duties.  Plaintiff alleges these costs were paid for by the employee delivery drivers for the primary benefit of the

Defendants, and the employee delivery drivers were reimbursed a per-mile reimbursement rate for each mile they drove that was less than the IRS standard business mileage rate.

Defendants deny any and all liability, and have asserted that the majority of the employee delivery drivers are subject to mandatory arbitration agreements governing these claims, but have agreed to settle the Lawsuit, on behalf of the Individual Defendants and the other Released Parties.

## IV.  SUMMARY OF THE SETTLEMENT AGREEMENT

The Settlement Agreement (**Exhibit 1**) is on behalf of similarly situated delivery drivers that TBD employed in its eight (8) Domino's stores in New Hampshire from September 24, 2016 to October 31, 2021, and in its three (3) Domino's stores in Massachusetts from June 28, 2018 to October 31, 2021.

The Settlement Amount is three hundred thousand dollars ($300,000).  All court-awarded amounts (i.e., for attorney's fees, costs Class Counsel incurred, Claims Administrator fees, service awards, etc.) will be subtracted from the Settlement Amount.  The remainder is the "Net Settlement Fund." The Parties will retain a Claims Administrator to issue Notice, establish a "Qualified Settlement Fund", and disburse the settlement payments.  Each Class Member's check will be equal to the Class Member's prorated share of the Net Settlement Fund based on the ratio of his or her Miles Driven within the applicable Class Period (numerator) and the total miles driven by the Class (denominator).

Within fourteen (14) days of the Court granting preliminary approval of the Settlement, TBD will provide the Claims Administrator with each Class Member's last known address, email address, and phone number (the "Class List").  The Claims Administrator will be responsible for locating Class Members through commercially-reasonable efforts.  Within fifty (50) days of the Court granting final approval of this Settlement Agreement, the Administrator will issue checks to

each Class Member who does not exclude him or herself. Checks may be cashed or negotiated within one hundred sixty (160) days of being issued. The amount of any uncashed checks from the Settlement Fund will be retained in the QSF and referred to as the "Contingency Fund." Any unclaimed amounts in the Contingency Fund as of October 31, 2024 will be returned to TBD.

As part of the Settlement Agreement, Defendants agree to not object to an award of attorneys' fees in the amount of 1/3 of the Settlement Amount, or one hundred thousand dollars ($100,000), which includes reimbursement of advanced litigation expenses/costs, payable within ten (10) days after the Effective Date of the Agreement, which is expected to be forty (40) days after final approval of the settlement. Defendants further agree to not object to a service award to Joshua Winsor of ten thousand dollars ($10,000) to be paid out of the Settlement Amount.

## V.  ARGUMENT

### A.  The Settlement Satisfies the Requirements for Preliminary Approval Under the FLSA and Fed. R. Civ. P. 23

"Courts approve FLSA settlements that are reached as a result of contested litigation to resolve bona fide disputes." *Lauture v. A.C. Moore Arts & Crafts, Inc.*, No. 17-cv-10219-JGD, 2017 U.S. Dist. LEXIS 87928, at *2 (D. Mass. June 8, 2017) ("Here, the settlement meets the standard for approval. The settlement followed adequate informal discovery and arm's-length negotiations with the assistance of a mediator, a former Magistrate Judge from the Eastern District of Pennsylvania, the Honorable Diane Welsh. Recognizing the uncertain legal and factual issues involved, the parties reached their settlement after attending a private mediation session supervised by Judge Welsh.").

A proposed settlement resolves a *bona fide* dispute where its terms "reflect a reasonable compromise over issues, such as…. back wages, that are actually in dispute." *Lynn's Food Stores, Inc. v. U.S.*, 679 F. 2d 1350, 1354 (11th Cir. 1982).

### 1.  Legal Standard For Approval of FLSA Settlements

"The private settlement of FLSA claims requires the approval of either the Department of

Labor or the district court." *Singleton v. AT&T Mobility Servs., LLC*, 146 F. Supp. 3d 258, 260 (D. Mass. 2015). "The Court may approve the settlement upon a finding that all parties to the action have agreed to it, and that it represents a "fair and reasonable resolution of a bona fide dispute over FLSA provisions. Further, '[w]here a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award.'" *Id.* (internal citations omitted).

Further, in assessing the fairness of an FLSA settlement, "the factors supporting approval of a Rule 23 settlement of state wage and hour claims may also support approval of a collective action settlement of FLSA claims." *Michaud v. Monro Muffler Brake, Inc.*, 12-cv-00353-NT, 2015 WL 1206490, at *9 (D. Me., Mar. 17, 2015) (*citing Scovil v. FedEx Ground Package Sys., Inc.*, 10-CV-515-DBH, 2014 WL 1057079, at *8 (D. Me. Mar. 14, 2014). Here, the proposed Settlement meets the standard for approval of an FLSA settlement because it is a fair and reasonable compromise of a bona fide dispute and, as discussed below, the requirements for approval of the Settlement under Rule 23 are met. The Court should therefore approve the Settlement as to both the Class and Collective.

### 2. Legal Standard for Preliminary Approval of Rule 23 Class Action Settlements

Courts in this Circuit recognize the "clear policy in favor of encouraging settlements." *Durett v. Housing Auth. of Providence*, 896 F. 2d 600, 604 (1st Cir. 1990); *E.E.O.C. v. Astra U.S.A., Inc.*, 94 F. 3d 738, 744 (1st Cir. 1996). Further, it is well established that "the law favors class action settlements." *In re Lupron Mktg. & Sales Practices, Litig.*, 228 F.R.D. 75, 88 (D. Mass 2005) (citation omitted)). The dismissal or compromise of any class action requires the Court's approval. Fed. R. Civ. P. 23(e). "Court approval of a class action settlement involves a two-step process" by which the Court must first determine whether the parties' proposed settlement warrants preliminary approval and then, after notice of the settlement is given to class members, whether final approval is justified. *Miller v.*

*Carrington Mortgage Serves*. LLC, 2:19-cv-00016-JDL, 2020 WL 2898837, at *4 (D. Me. June 3, 2020) (citing Fed. R. Civ. P. 23(e) (1)(B), (2)).

Under Rule 23(e), where a class settlement is "proposed," the court "must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court *will likely be able to*: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(i)(ii) (emphasis added). *Miller*, 2020 WL 2898837, at *4 (at preliminary approval stage, the court considers whether it "will be likely be able to" approve the settlement). "At the preliminary approval stage, the Court need not make a final determination regarding the fairness, reasonableness, and adequateness of a proposed settlement; rather, the Court need only determine whether it falls within the range of possible approval." *In re Puerto Rican Cabotage Antitrust Litig.*, 269 F.R.D. 125, 140 (D.P.R. 2010) (collecting cases). As discussed below, the standard is satisfied here.

In order to determine whether the settlement is "fair, reasonable, and adequate," a court must look to Rule 23(e)(2)'s approval factors, which examine whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2).

There is a "presumption that the settlement is within the range of reasonableness" when "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of

the class objected." *In re Lupron Marketing & Sales Practices Litig.*, 345 F. Supp. 2d 135, 137 (D.

Mass. 2004). Ultimately, courts in this Circuit instruct that "[t]he fairness determination is not

based on a single inflexible litmus test but, instead, reflects [the court's] studied review of a wide

variety of factors bearing on the central question of whether the settlement is reasonable in light

of the uncertainty of litigation." *Rolland v. Cellucci*, 191 F.R.D. 3, 8 (D. Mass. 2000) (citation

omitted).

### B. The Proposed Settlement Is A Fair, Reasonable and Adequate Resolution of a Bona Fide Dispute

#### 1. *The Settlement Resolves A Bona Fide Dispute*

The expense reimbursement, wage and other FLSA issues raised in this Litigation are the

subject of multiple lawsuits around the United States and form a bona fide dispute in this litigation

– with different District Courts coming to different results. Plaintiff contends that Defendants have

two options: (1) track and reimburse each drivers' actual expenses or (2) reimburse the drivers at

the IRS standard business mileage rate. *See, e.g., Hatmaker v. PJ Ohio, LLC*, No. 3:17-cv-146,

2019 WL 5725043 (S.D. Ohio Nov. 5, 2019). In contrast, Defendants contend that they are

permitted to reasonably approximate the drivers' expenses and pay that approximation. *See, e.g.,*

*Kennedy v. Mountainside Pizza, Inc.*, No. 19-CV-01199-CMA-STV, 2020 WL 5076756, at *3 (D.

Colo. Aug. 26, 2020); *Perrin v. Papa John's Int'l, Inc.*, 114 F. Supp. 3d 707 (E.D. Mo. 2015).

The effect of this legal dispute is two-fold. First, it affects the amount, if any, that

Defendants must reimburse their drivers. Second, it affects how damages, if any, would be proved.

Specifically, if the Court adopted Plaintiffs' position, Defendants would owe the difference

between the IRS standard business mileage rate and what Defendants actually paid based upon

Plaintiff's theory. But, if the Court adopted Defendants' position, then the parties would dispute

what the proper reimbursement rate was (likely through expert testimony) and measure Defendants' compliance against whichever standard the Court or jury adopted.

Moreover, Defendants in this Litigation assert that their employee drivers are subject to binding arbitration agreements that would prevent any Collective or Class action. This issue was briefed in detail by the parties (see Doc. Nos. 24, 28, 32, 34, 43, 51, 64, 68, 72 and 73).

Ultimately the Settlement represents a compromised resolution of these issues, as well as others, that take into account the risks that members of the proposed Collective and Class would face if the case proceeded to trial. The Settlement provides certain and substantial payments for the delivery drivers who are members of the Settlement Class and Collective in this case.

2. *Plaintiff And Class Counsel Have More Than Adequately Represented The Interests Of The Class*

"The duty of adequate representation requires counsel to represent the class competently and vigorously and without conflicts of interest with the class." *Nat'l Assoc. of Deaf v. Mass. Institute of Technology*, No. 3:15-cv-30024-KAR, 2020 WL 1495903, at *3 (D. Mass. Mar. 27, 2020) (citation omitted).

In the course of pursuing this litigation for over two years, Plaintiff's Counsel conducted intensive factual and legal investigation of their claims; prepared formal written discovery and responses, produced the named plaintiff Joshua Winsor for his deposition, analyzed state and federal laws applicable to their claims; reviewed discovery produced by Defendants; and exhaustively negotiated this Settlement following mediation. This is in addition to the voluminous legal briefing regarding the employee arbitration agreements that prompted the transfer of this Litigation from New Hampshire to Massachusetts. See Raimond Decl.

The named plaintiff Joshua Winsor provided invaluable assistance as well, filing the claims on behalf of himself and other similarly situated drivers, responding to discovery, appearing for a

deposition and assisting in motion practice.

3. *The Proposed Settlement Was Negotiated At Arms-Length And The Proponents Of The Settlement Are Highly Experienced In Similar Litigation*

"A settlement is presumed to be reasonable when it is achieved by arm's length negotiations conducted by experienced counsel." *Nat'l Assoc. of Deaf*, 2020 WL 1495903, at *4 (citation omitted).

The Settlement Agreement here resulted from mediation and subsequent arms-length negotiations with the assistance of the Honorable F. Bradford Stillman (ret.).  He was a United States Magistrate Judge in the Eastern District of Virginia from 2000-2012, has settled hundreds of cases as a private mediator, and is experienced in these FLSA and wage claims.

Defendants produced their data maintained within the Domino's PULSE system to document the miles driven by the subject delivery drivers.  Thus, the parties had a well-informed basis to evaluate the merits of the claims and the defenses in the action.

Plaintiffs are represented by highly experienced and competent counsel who have litigated numerous pizza delivery driver expense reimbursement wage and hour cases successfully in District Courts throughout the United States.  In fact, this case is one of many "pizza delivery driver lawsuits" that Plaintiffs' counsel and Defendants' counsel are litigating across the nation.

4. *The Relief Obtained For The Class Is Adequate Measured Against The Risk Of Continued Litigation*

In determining the reasonableness of the settlement, "usually, the ultimate decision by the judge involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement." *Nat'l Assoc. of Chain Drug Stores v. New England Carpenters*, 582 F. 3d 30, 44 (1st Cir. 2009). Here, the relief offered by the settlement is more than adequate. The Gross Settlement Amount is a negotiated amount that resulted from substantial arms' length negotiations and investigation and

analysis by Plaintiff's Counsel. Counsel based their damages analysis and settlement negotiations on formal and informal discovery, including mileage data produced by Defendants, pre-Litigation delivery expense calculations, and the deposition of the named plaintiff Joshua Winsor.

The Gross Settlement Amount of $300,000 also takes into account the substantial risks inherent in these pizza delivery expense reimbursement claims. For example, just days before the private mediation, defense counsel in this Litigation obtained a favorable decision in another pizza delivery case where the District Court granted partial summary judgment to the Defendant. *See Bradford v. Team Pizza*, No. 1:20-cv-00060, 2021 U.S. Dist. LEXIS 200773 (S.D. Ohio Oct. 19, 2021). Based on an IRS mileage reimbursement rate theory, with a mean reimbursement rate of $0.57 per mile, Plaintiff maintains the Class could have recovered an additional $934,000 for 3,718,927 miles driven across all of the Defendants' Domino's stores. However, using the *Bradford* methodology that permits reasonable approximation, the recovery could have been much less, or nothing.

Measured against these risks and delays, especially if the employee arbitration agreements were enforced, the Settlement will result in immediate and certain payment to Settlement Class and Collective Members. Courts routinely approve settlements that provide a fraction of the maximum potential recovery where substantial risks exist. *See, e.g., Dillworth v. Case Farms Processing, Inc*, No, 5:08-cv-1694, 2010 WL 776933, at *8 (N.D. Ohio, Mar. 8, 2010) (recovery of 1/3 of owed wages for class members before deducting attorneys' fees and costs is "well-above" average); *Rodriguez v. West Publ'g Corp.*, No. CV05–3222 R(MCx), 2007 WL 2827379, at *9 (C.D. Cal. Sept. 10, 2007) (approving 30% of damages); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 256-58 (D. Del. 2002) (approving 33% of damages); *In Re Sunrise Secs. Litig.*, 131 F.R.D. 450, 457 (E.D. Pa. 1990) (approving 20% of damages); *In Re Armored Car Antitrust Litig.*, 472 F.Supp. 1357, 1373 (N.D. Ga.1979) (settlements with a value of 1% to 8% of the estimated total damages were

approved); *Entin v. Barg*, 412 F.Supp. 508, 514 (E.D. Pa. 1976) (approving 17% of damages); *In Re Four Seasons Secs. Laws Litig.*, 58 F.R.D. 19, 37 (W.D. Okla.1972) (approving 8% of damages); *Viceral v. Mistras Grp., Inc.*, Case No. 15-cv-2198-EMC, 2016 WL 5907869, at *7 (N.D. Cal. Oct. 11, 2016) (approving wage and hour settlement which represented 8.1% of the total verdict value); *Stovall-Gusman v. W.W. Granger, Inc.*, 13-cv-02540-HSG, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) ("10% gross and 7.3% net figures are 'within the range of reasonableness'"); *Balderas v. Massage Envy Franchising, LLP*, Case No. 12–cv–06327 NC, 2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014) (gross settlement amount of 8% of maximum recovery and net settlement amount of 5%); *Ma v. Covidien Holding, Inc.*, No. SACV 12–02161–DOC, 2014 WL 360196, at *4-5 (C.D. Cal. Jan. 31, 2014) (9.1% of "the total value of the action" is within the range of reasonableness).

> 5. *The Proposed Settlement Treats Class Members Equitably To Each Other*

Finally, all settlement class members will receive equitable treatment under the settlement. In an effort to ensure fairness, the Parties have agreed to allocate the settlement proceeds among Class Members based on the number of miles that they drove working for Defendants in the applicable period.

## C. The Court Should Preliminarily Certify the State Law Settlement Classes under Rule 23(a) and (b)(3)

In order to obtain approval of the class action settlement on behalf of the Class, the Court must ensure that the prerequisites of class certification under Rule 23 are satisfied. The Parties have stipulated that, for settlement purposes only, the requirements for establishing class certification pursuant to Rule 23(a) and (b)(3) have been met. Settlement, Plaintiffs now move for preliminary certification of the proposed respective Massachusetts and New Hampshire Settlement Classes under Rule 23(a) and 23(b)(3) defined in Section IV, *supra*. "To obtain certification of a class action for money damages under Rule 23(b)(3), a plaintiff must satisfy Rule 23(a)'s...prerequisites of numerosity, commonality, typicality, and adequacy of representation...and must also establish that 'the

questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013) (quoting Rule 23(b)(3)). The proposed settlement class satisfies the relevant criteria.

### 1. *Numerosity*

The numerosity requirement is satisfied here where joinder of all class members would be "impracticable." Fed. R. Civ. P. 23(a)(1). "[C]ourts in this Circuit have generally found that a class of 40 or more individuals satisfies the numerosity requirement." *Michaud*, 2015 WL 1206490, at *2. Here, Defendants' records indicate that 346 drivers were employed during the Class periods in Massachusetts and 703 drivers were employed in New Hampshire. This is well more than 40 individuals.

### 2. *Commonality*

A class also must share common questions of law or fact. Fed. R. Civ. P. 23(a)(2). The commonality prerequisite "is not a difficult one to meet." *See In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 69 (D. Mass. 2005). When the claims arise out of a companywide policy or practice, the commonality prerequisite is satisfied. *See, e.g., Overka v. American Airlines*, 265 F.R.D. 14, 18 (D. Mass. 2010) (the "commonality requirement is usually satisfied" where "implementation of [a] common scheme is alleged"). Here, the proposed classes satisfy the "commonality" prong because all class members challenge Defendant's delivery expense reimbursement policies. *See, e.g., Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 308 (E.D. Pa. 2012) (finding that the class maintained a common claim that the employer broadly enforced an unlawful policy denying employees earned overtime compensation and that the policy was "the common answer that potentially drives the resolution of [the] litigation," though "each Plaintiff's recovery might be different due to the number of hours that he or she worked without proper compensation").

### 3. Typicality

To meet the requirement of typicality, the class representatives' claims must "arise from the same event or practice or course of conduct that gives rise to the claims of other class members, and [be] based on the same legal theory." *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009) (internal quotation marks omitted). Here, the claims of the named plaintiff Joshua Winsor are identical to those asserted on behalf of the Rule 23 class members that Plaintiff seeks to represent, that the drivers did not have their actual expenses tracked by Defendants and should have been reimbursed at the IRS mileage rate. Thus, typicality is established. *See, e.g., Garcia v. E.J. Amusements of New Hampshire, Inc.*, 98 F. Supp. 3d 277, 288 (D. Mass. 2015) (holding that plaintiff's "overtime claims are typical of the claims he intends to bring on behalf of the class" and certifying class under Rule 23); *Michaud*, 2015 WL 1206490, at *3 (typicality met where the named plaintiff's injury arises from the same course of conduct and legal theories as the other proposed class members).

### 4. Adequacy

To satisfy the adequate representation requirement, "[t]he moving party must show first that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985). Here, the named plaintiff Joshua Winsor shares the same interests as the other delivery drivers employed by Defendants – to seek adequate delivery expense reimbursement. In addition, class counsel are highly experienced and have successfully acted as counsel in other pizza delivery lawsuits throughout the United States. *See* Section B(3), *supra*.

### 5. Predominance

Predominance is satisfied upon showing that a sufficient constellation of common issues bind class members together. *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 296 (1st Cir. 2000). The requirement is "merely that common issues predominate, not that all issues be common to the class."

*Smilow v. Southwestern Bell Mobile Systems, Inc.*, 323 F.3d 32, 39 (1st Cir. 2003). Courts have routinely held that the predominance requirement is satisfied in age and hour cases such as this where employees challenge a uniform policy of their employer, because there are common answers that will determine the outcome of the litigation.

In this case, Plaintiff alleges all pizza delivery drivers were subject to the same delivery expense reimbursement policy. Defendants did not track actual delivery expenses (and deny they had any obligation to do so). There is a common question whether the drivers should have been reimbursed at the IRS mileage rate (as alleged by Plaintiff) or at a reasonable approximation rate (as alleged by Defendants).

### 6. *Superiority*

The requirement of superiority ensures that resolution by class action will achieve economies of time, effort, and expense, and promote uniformity of decisions as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results. *In re Relafen Antitrust Litig., 231 F.R.D.* at 70. The requirement is also designed to ensure the "vindication of the rights of groups of people who individually would be without effective strength to bring their opponents to court at all." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997). Superiority is satisfied here, where the class members may not have the means to pursue individual actions to recover their damages, and important employment law rights might go unaddressed due to the difficulty of finding legal representation and filing claims on an individual basis. In addition, allowing the members of the Settlement Class to participate in a class settlement that yields an immediate, meaningful, and certain relief is superior to having a multiplicity of individual and duplicative proceedings in this Court.

Because the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, Plaintiffs respectfully request that the Court provisionally certify the Settlement Class for settlement purposes only.

- 14 -

### D. Collective Certification Under 29 U.S.C. § 216(b) is Appropriate

Courts in the First Circuit typically employ a "two step" approach to certification of an FLSA collective, the first taking place early in the case, when the court simply determines whether the named Plaintiff is "similarly situated" to the proposed class members under 29 U.S.C. § 216(b) sufficient to enable notice to be given to potential collective members. The second stage typically takes place after the close of discovery, when an employer moves to decertify the collective action. *Johnson v. VCG Holding Corp.*, 802 F. Supp. 2d 227, 233 (D. Me. 2011). Here, with respect to the first step, the Court has already conditionally certified a collective under 29 U.S.C. § 216(b) for purposes of sending notice (Dkt No. 102). It was that decision on June 8, 2021 that precipitated the parties' July 12, 2021 motion to stay the case pending private mediation.

The prerequisites for conditional certification of an FLSA collective are more lenient than those under Rule 23, discussed above. *See, e.g., Poreda v. Boise Cascade, LLC*, 532 F. Supp. 2d 234, 239 (D. Mass. 2008) (explaining that conditional certification is regularly determined under a "fairly lenient" standard). Because the Court should find that the proposed class meets the more stringent requirements of Rule 23, the Court should also find that final certification of the Collective for settlement purposes is appropriate.

### E. The Service Award for Joshua Winsor Is Appropriate and Should be Approved

Joshua Winsor seeks an incentive payment of $10,000 for his efforts in bringing and prosecuting this Litigation. "Incentive awards are recognized as serving an important function in promoting class action settlements, particularly where, as here, the named Plaintiff participated in the litigation." *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005) (citation omitted). Awards in wage and hour cases and other employment cases are generally higher than in other types of cases, and "recently awards of $10,000 and $15,000 are not uncommon, and on occasion reach $20,000, $30,000 and higher." *Scovil v. FedEx Ground Package Sys., Inc.*, No. 1:10-cv-515-DBH, 2014 WL

1057079, at *6 (D. Me. Mar. 14, 2014). Here, Mr. Winsor provided invaluable assistance providing background information, responding to discovery, preparing for and participating in his deposition, and in signing a declaration in support of motion practice. He was still employed by Defendants at the time the Litigation was commenced and took a risk to step forward and represent the interests of his fellow delivery drivers. All Settlement Class and Collective Members will be receiving a significant benefit from Plaintiffs' service in the form of monetary compensation.

### F. The Proposed Method of Class Notice Should Be Approved

Under Rule 23, the threshold for class notice is that it be "reasonably calculated to reach the class members and inform them of the existence of an opportunity to object to the settlement." *Nilsen v. York County*, 382 F. Supp. 2d 206, 2010 (D. Me. 2005) (citation omitted). Procedural due process requires only that notice be reasonably calculated "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).

Rule 23(c)(2)(B) requires the absent class members receive the "best notice that is practicable under the circumstances." Rule 23(c)(2)(B). It is well-settled that notice by first-class mail satisfies the notice requirement of Rule 23. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173–77 (1974).

The proposed Notice of Settlement (attached as Exhibit 1 to the Settlement Agreement), and manner of distribution satisfies the requirements of Rule 23. The Parties will retain a claims administrator – CAC – to transmit the Notice of Settlement by regular U.S. Mail and Electronic Mail. The Claims Administrator will be responsible for locating Class Members through commercially-reasonable efforts. Moreover, upon reasonable request, Class Counsel and/or the Administrator may provide additional copies of the Notices to a requesting Class Member in the format most convenient for the Class Member.

The proposed Notice clearly identifies basic information about the lawsuit, including the

monetary awards that will be provided to Settlement Class and Collective Members, the allocation formula, the scope of the release, the requests for attorneys' fees and costs, and service awards, and explains how class members can claim a share of the settlement and dispute a claim, and the procedures and deadlines if they wish to exercise their right to opt-out or object to the settlement. It will also list the date, location, and time of the final fairness hearing and include contact information for class counsel if they need further information. The Notice clearly states that the settlement does not constitute an admission of liability by Defendants and makes clear that the final settlement approval decision has yet to be made. Thus, the notice is sufficient. *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 203 (D. Me. 2003) ("The notice must describe fairly, accurately and neutrally the claims and parties in the litigation, the terms of the proposed settlement, and the options available to individuals entitled to participate, including the right to exclude themselves from the class."); *Lapan v. Dick's Sporting Goods, Inc.*, No. 1:13-cv-11390-R, 2015 WL 8664204, at * (D. Mass. Dec. 11, 2015) (notice of settlement to FLSA and state law classes complies with due process and Rule 23 which "describes the terms of the settlement, informs the class about the allocation of attorney's' fees, and provides specific information regarding the date, time, and place of the final approval hearing.").

Class Counsel expects to be able to contact most of the class members through first-class mail and by email (if available).

### G. The Requested Attorneys' Fees and Costs are Fair, Reasonable, and Supported by Applicable Precedent

In the motion for final approval, Class Counsel will request an award of attorneys' fees and expenses of $100,000, or one-third of the total settlement. The proposed Notice will inform class members that Plaintiff's Counsel will seek these attorneys' fees and costs in these amounts.

Courts generally favor awarding fees from a common fund based upon a percentage of the

fund. *Belling Company v. Van Gemert*, 444 U.S. 472, 478 (1980), and a one-third attorneys' fee award in a common fund case has been consistently approved as reasonable. *See, e.g., Mansingh v. Exel Direct, Inc.*, C.A. No. 12-11661-DPW (D. Mass. May 7, 2014) (awarding one-third fee in settlement for $1 million); *Chalverus v. Pegasystems, Inc.*, Civ. A. No. 97-12570-WGY (D. Mass. 2000) (awarding as an attorneys' fee one-third of a more than $5 million recovery). Given this precedent, and, for the reasons to be submitted in the Final Approval Motion, approving a one-third recovery for attorneys' fees and costs in this class action case, which includes all costs and expenses, is reasonable.

### H. Proposed Schedule

The Settlement Agreement at page "11" contains a proposed schedule for notice and final approval of the Settlement Agreement. Plaintiffs respectfully request this Court approve the proposed schedule as follows:

| | |
|---|---|
| Production of class data | TBD will transmit to claims administrator within 7 days of preliminary approval |
| Notice | Notice will be sent within 14 days of transmission to the claims administrator by TBD |
| Notice Period | Class members will have 60 days from the date of mailing to opt-out or object to the settlement |
| Motion For Final Approval | Plaintiff will file a motion for final approval within 30 days of the close of the Notice Period |
| Payment Calculations | Within fourteen (14) days of the Court's Final Approval Order, the Administrator will calculate amounts due to the Class Members under the agreement in light of the Court's Order and provide those calculations to Defendants' Counsel and Class Counsel. Class Counsel and/or Defendants' Counsel will promptly provide the Administrator with any corrections or changes to those calculations. |

| | |
|---|---|
| QSF Funding | Within thirty-five (35) days of the Court's Final Approval Order, TBD will transmit to the Administrator the Settlement Amount. |
| Payment | Between thirty -six (36)  and forty-five (45) days after the Court's Final Approval Order, the Administrator will send to Class Members and Class Counsel all amounts due under this Settlement Agreement relating to the Class Members, the court-approved service award, and the court-approved attorneys' fees and costs. |

## VI.   CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that this Court enter the accompanying Order and grant preliminary approval of this proposed settlement and allow Plaintiffs to send class members the proposed Notice attached to the Settlement Agreement as Exhibit 1.

Dated:  December 21, 2021

Respectfully submitted,

/s/ Meaghan Jepsen
Meaghan A. Jepsen (BBO# 693470)
Ransmeier & Spellman P.C.
1 Capitol Street, P.O. Box 600
Concord, N.H. 03302-0600
Tel: (603) 410-4913
mjepsen@ranspell.com

*Local Counsel for Plaintiff and the Proposed Settlement Class*

/s/ Frank V. Raimond
Frank V. Raimond (*pro hac vice*)
Raimond & Staines, LLC
305 Broadway, 7th Floor
New York, New York 10007
frank@raimondstaines.com

*Counsel for Plaintiff and the Proposed Settlement Class*

## CERTIFICATE OF CONFERENCE

I hereby certify that I have discussed this motion with counsel for Defendants and that Defendants assent to the relief requested.

*/s/ Meaghan Jepsen*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 21, 2021, a copy of this document was served by electronic filing on all counsel of record.

*/s/ Meaghan Jepsen*